Carl Freeman v. Commissioner.
Freeman v. Commissioner
Docket No. 94684.
United States Tax Court
T.C. Memo 1965-17; 1965 Tax Ct. Memo LEXIS 313; 24 T.C.M. (CCH) 73; T.C.M. (RIA) 65017; February 1, 1965
Richard Weinberger, 77 W. Washington St., Chicago, Ill., for the petitioner. Theodore W. Hirsh, for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined the following income tax deficiencies: $10,390.95 for 1954, $9,165.37 for 1955, $9,378.19 for 1956 and $24,526.96 for 1957. One issue for decision is whether the petitioner is entitled to deduct for 1956 and 1957 amounts deducted and allegedly spent in those years for repairs and other expenses of rental property. Another issue for decision is whether amounts paid in 1954, 1955, 1956 and 1957 in connection with a bankruptcy proceeding initiated by the petitioner in 1953 against The Sussin Corporation are deductible as ordinary and necessary expenses of a trade or business regularly carried on by the petitioner or as losses from a transaction entered into for profit and whether he had a net operating loss in 1956 which can be carried back to *315 1954 and 1955 and any excess carried forward to 1957. The Commissioner concedes that the petitioner is entitled to deduct for 1957 $588.63 paid for fire insurance and $8,310.32 paid as interest. The petitioner has abandoned claims for deductions for miscellaneous, auto and travel expenses for 1954, 1955 and 1956. Findings of Fact The petitioner filed individual Federal income tax returns for the taxable years with the district director of internal revenue at Chicago, Illinois. The petitioner was then a resident of Chicago. The stipulation of facts filed by the parties is incorporated herein by this reference, together with all exhibits incorporated therein. The Commissioner in determining the deficiencies for 1956 and 1957 disallowed the following deductions claimed for rental property: 1956 - Repairs $722.64, other expense $1,602. 1957 - Repairs $1,200, other expense $1,118.31. The building referred to in those returns was a three-story brick building which Freeman rented to a chain store. The record in this case does not show that the amounts above set forth or any parts thereof were actually spent in the years 1956 or 1957, or, if spent, what exactly they were spent *316 for, or that any part of such amounts was deductible for income tax purposes in either year. The petitioner was 78 years of age in 1964. The last business he had been in was the photo-engraving business in Chicago. He had been in that business for 20 or 30 years before he retired in 1951. The petitioner had purchased equipment in the 1940's from Consolidated, a factory which manufactured large cameras. He knew Russell Borrowdale who worked for Consolidated as shop foreman. Sussin designed cameras for Consolidated. Borrowdale and Sussin left Consolidated in about 1946 and started The Sussin Corporation to manufacture the same type of camera. The petitioner in 1952 went to see Borrowdale who told him that he had orders for two cameras and was manufacturing one camera but was in financial difficulties and needed money to buy parts for it. Borrowdale said that if the petitioner would supply needed funds he would manufacture the cameras and the petitioner would have the exclusive right to sell them on a 40% commission. The petitioner orally agreed. Borrowdale also told the petitioner that he was The Sussin Corporation but the petitioner knew that other persons owned some stock *317 of that corporation. The record does not show how the stock of The Sussin Corporation was held in 1952. The petitioner from April 2, 1952 to September 24, 1952 made out and gave to Borrowdale or The Sussin Corporation 11 checks drawn either on his own bank account or on the bank account of Sussin Sales Company, solely owned by him. He also made out 12 other checks to third parties. The total amount of the 23 checks was under $11,000, some of which was used to settle past due bills, some to obtain material needed to complete the one camera under construction and the balance for purposes not shown by this record. The deductibility of the amounts of the 23 checks is not at issue in this proceeding. The one camera completed by The Sussin Corporation in 1952 was delivered to the purchaser who gave back in the exchange a camera previously bought from The Sussin Corporation. The petitioner, at some time not shown by this record, sold the returned camera for an amount and under circumstances not shown by the record in this case. The record does not show that any new camera was ever available for sale by the petitioner. The record herein does not show what amount, if any, the petitioner *318 received in reimbursement for the checks referred to above. The petitioner, at some time prior to February 20, 1953, not disclosed by the record in this case, consulted a lawyer as to how he should proceed against The Sussin Corporation in order to get action and force a settlement. That lawyer conferred with Borrowdale's lawyer without any success and thereafter advised the petitioner to file a petition to have The Sussin Corporation adjudicated a bankrupt. Such petition was filed. The petitioner claimed in the bankruptcy proceedings that he was a creditor of The Sussin Corporation in the unsecured amount of $13,680 made up of $11,000 loaned by him to the alleged bankrupt and $2,680 past due for services rendered by him to the alleged bankrupt. There is no showing in the record herein that The Sussin Corporation owed the petitioner any amount on February 20, 1953. It was held in the bankruptcy proceeding that he was not a creditor of The Sussin Corporation on that date or at any other time. The Sussin Corporation alleged in the bankruptcy that the petitioner was indebted to it in large amounts. The Sussin Corporation of Chicago, Illinois, was engaged in April, 1952, in the business *319 of manufacturing one large commercial camera for use in the graphic arts industry. The petitioner filed, in the District Court of the United States at Chicago on February 20, 1953, his petition for the adjudication of Sussin Corporation as a bankrupt. That Court, after numerous hearings before referees in bankruptcy, entered an order in 1954 dismissing the aforesaid petition, finding that that petition was not filed in good faith and reserving jurisdiction to assess damages against that petitioner. The petitioner appealed that order to the Seventh Circuit Court of Appeals which affirmed the District Court order in 1955, whereupon the petitioner petitioned the Supreme Court of the United States for a writ of certiorari, which was denied. The petitioner paid in connection with the bankruptcy proceeding brought against The Sussin Corporation court reporter fees of $2,188.39 and legal fees of $5,005.96 in 1954, legal fees of $8,885.00 in 1955 and legal fees of $4,470.06 in 1956. The petitioner claimed deduction of those amounts on his returns for those years and in addition claimed for 1956, "Settlement Sussin Corp. lawsuit $115,334.00." All were claimed under "Itemized Deductions *320 - Miscellaneous." He claimed on his 1957 return, in Schedule H - Other Income, "Loss from 1956 tax return $94,725.87." The Commissioner in his notice of deficiency held with respect to the above items that the fees and the lawsuit deductions claimed on the 1954, 1955, and 1956 returns "do not represent ordinary and necessary expenses of a trade or business, or expenditures deductible under any provision of the Internal Revenue Code of 1954." He also held that the $94,725.87 deduction claimed on the 1957 return "is not allowable as there is no net operating loss for 1956 within the purview of section 172(c), Internal Revenue Code of 1954, and no net operating loss carryover to 1957, within the purview of section 172(b), Internal Revenue Code of 1954." An agreement dated May 15, 1956 was entered into by the petitioner and Borrowdale, who acted for himself, for The Sussin Corporation as its president, for his three sons, as individuals and doing business as Borrowdale Brothers, and for his wife Edna. The agreement was to settle for money claimed to be due from the petitioner as a result of his filing the petition in bankruptcy against The *321 Sussin Corporation. The petitioner, pursuant to the agreement of May 15, 1956 and to obtain a release dated June 8, 1956, made payments as follows: Cash
$75,000.00
His promissory note dated May 18,
1956 for $10,000 paid on January 21,
1951 with interest of $333.34
10,333.34
Real estate having a basis of
29,251.36
Legal fees
750.00
Total
$115,334.70
The record in this case does not show that the petitioner was carrying on any business at any time during the taxable years now before this Court. Opinion MURDOCK, Judge: Counsel for the petitioner contends that he should be allowed some deductions for 1956 and 1957 for amounts spent in and claimed for those years for "repairs" to and "other expenses" on a rented building. The Commissioner disallowed those deductions "because it has not been established that the disallowed amount was in fact paid or, if paid, represents a deductible expense or was expended for the purpose designated." This situation was not improved by the petitioner whose testimony on this subject, some in reply to leading questions, was too vague and general to sustain his burden of proof or to show that any of these amounts was spent *322 or that any part of it was spent for a deductible expense. It is not clear that he could remember at the trial that any certain amount was spent or what it was spent for and he had no supporting evidence. There is insufficient evidence on this issue to disturb the determination of the Commissioner. Another issue relates solely to the deductibility of amounts stipulated to have been paid as court reporter fees in 1954 and legal fees in 1954, 1955 and 1956 in connection with the bankruptcy proceeding brought by the petitioner against The Sussin Corporation early in 1953 and the amounts paid in 1956 and 1957 pursuant to the agreement and general release incorporated in the stipulated facts. The petitioner first contends that these amounts are deductible under section 162(a) of the 1954 Internal Revenue Code which allows "as a deduction all the ordinary and necessary expenses paid * * * during the taxable year in carrying on any trade or business." The alleged business relied upon must be as salesman of cameras made by The Sussin Corporation. The term of the agreement between Borrowdale and the petitioner is not clear from the record in this case nor is its effect *323 upon The Sussin Corporation. If the petitioner was ever engaged in such a business there is no evidence in the present record that it existed after 1952 or that it existed during any of the tax years before the Court in this case. The evidence does not show that the fees and the other payments, stipulated as paid during the years now before this Court, were ordinary and necessary expenses of any business carried on by the petitioner during those years. There is no evidence that The Sussin Corporation produced any camera during the years 1954 through 1957. The returns of the petitioner do not show that he was then engaged in carrying on any such trade or business as selling cameras made by The Sussin Corporation. Thus, the evidence fails to support the petitioner's contention that the amounts in question were deductible under section 162. The alternative contention of the petitioner is that the same amounts, if not deductible under section 162, were losses deductible under section 165(a) and (c) of the 1954 Code. Section 165(c)(1) is not applicable since, as has been held above, the petitioner was not carrying on any trade or business in the taxable years in which the alleged losses *324 were incurred. Section 165(a) and (c)(2) allow a deduction for any loss sustained during a taxable year and not compensated for by insurance or otherwise which an individual "incurred in any transaction entered into for profit, though not connected with a trade or business." The petitioner to win under these provisions must prove that during the taxable years he sustained the claimed losses in a transaction which he entered into for profit. He testified that he and Borrowdale in 1952 entered into an oral agreement that the petitioner would have the exclusive right to sell some cameras manufactured by Borrowdale. However, the evidence does not show that the losses here claimed resulted even indirectly from that vague oral agreement. The payments were made in connection with a bankruptcy proceeding brought by the petitioner against The Sussin Corporation. If that was a transaction which the petitioner entered into for profit, that fact has not been proven. Neither has the relationship, if any, been shown between the petitioner's 1952 oral sales agreement with Borrowdale and the petitioner's institution of the bankruptcy proceeding against The Sussin Corporation. The petitioner testified *325 that he did not intend to file the petition filed on February 20, 1953, and it is not clear from this record just what he had in mind or why the bankruptcy proceeding was initiated. To justify deduction of the large amounts here involved reasonably clear supporting evidence should have been introduced to overcome the presumption of correctness attaching to the determination of the Commissioner. The petitioner's contention that he sustained a net operating loss in 1956 which can be carried back to 1954 and 1955 and any excess carried forward to 1957, also falls for failure of proof. It depends upon the deductibility of the fees and settlement amounts paid in 1956 in connection with the Sussin bankruptcy proceeding and the holding above sustains the Commissioner's disallowance of those claimed deductions. Decision will be entered under Rule 50.